[Filed November 9, 1887.]

## W. A. SCOGGIN, ADM'R, APPELLANT, *v.* CHRISTOPHER SCHLOATH ET AL., RESPONDENTS.

FRAUDULENT CONVEYANCE — INADEQUACY OF CONSIDERATION. — When land of the value of two thousand dollars was conveyed for the consideration of one hundred dollars, *held,* that as against existing creditors, such deed was constructively fraudulent.

CONSIDERATION IN DEED — WHEN MONEYED CONSIDERATION CANNOT BE SHOWN. — When the consideration in a deed is expressed to be natural love and affection, or marriage, or the like, it is not competent for the purpose of supporting the deed to prove that the consideration was a moneyed one.

SAME — DIFFERENT IN KIND. — A consideration different *in kind* from that expressed in a deed cannot be proven; but when the consideration expressed is a moneyed one, for the purpose of rebutting the presumption of fraud, a larger or different moneyed consideration may be proven.

FRAUD — PROOF OF. — Circumstances considered which tend to prove the deed was fraudulent.

APPEAL from Multnomah County. Reversed.

*Tanner & Carey,* and *Zera Snow,* for Appellant.

*Caples & Mulkey,* for Respondents.

STRAHAN, J. — In this case the appellant sues as administrator of the estate of Thomas Sherlock, deceased. The object of this suit is to set aside, and to have declared void for fraud, a certain deed of conveyance made by Thomas Sherlock in his lifetime to the respondent Dora Schloath. This suit was commenced and is prosecuted by the order of the County Court of Multnomah

County, Oregon, made pursuant to sections 1167 and 1168 of Hill's Code. The complaint alleges, among other things, that plaintiff is administrator of said estate, and that claims aggregating something near one thousand dollars have been duly presented and allowed against said estate, and that there are no available assets applicable to the payment of said claims, and the costs and expenses of administration; that Thomas Sherlock in his lifetime was seised of one hundred and sixty acres of land, situated on Sauvie's Island, in the State of Oregon; that he died on the twelfth day of April, 1886; that on the fifteenth day of July, 1885, he executed to the defendant Dora Schloath a deed conveying to her said land, for the consideration of one hundred dollars. The complaint further shows that said Sherlock was, during the last two years of his life, addicted to the excessive use of intoxicating liquors, and had become weak in mind and body, and dependent entirely on the Schloaths for care and attention, and for advice as to the management of his property; that the Schloaths, taking advantage of his situation and condition, by the exercise of undue influence, and with the intent to hinder, delay, and defraud the creditors of said Sherlock, induced, persuaded, and compelled him to execute the deed in question for the nominal consideration of one hundred dollars, which in fact was never paid; and that said property was of the value of two thousand five hundred dollars.

The answer denies the allegation of the complaint, and then alleges that on or about the fifteenth day of June, 1885, the said Thomas Sherlock and Dora Schloath had an accounting and settlement of all their affairs and business transactions, upon which said accounting and settlement it was found and ascertained and mutually agreed upon that said Thomas Sherlock was justly and truly indebted to said Dora Schloath in the full sum of two thousand dollars for board and lodging, and for money loaned and furnished said Sherlock, and that, in consideration of said sum of two thousand dollars, and the further sum of one hundred dollars then and there paid him, the said Sherlock made and delivered the deed in question. The reply presents an issue as to the new matter in the answer.

An examination of the evidence leads us to the conclusion that Thomas Sherlock drank to great excess during the last two or three years of his life, and that for some time before his death his physical as well as his mental organization was greatly impaired, and that his mind had become so weak that he had no power to resist the importunities of those by whom he was surrounded. But although much evidence was given on this branch of the case, it is unnecessary to consider it in this place, for the reason that there is another question presented by this record which is fatal to the validity of the deed in question. The consideration expressed in the deed is one hundred dollars. The property conveyed is admitted to be worth two thousand dollars by the defendants, and its real value, according to the evidence, is probably somewhat greater. The debts which the plaintiff represents were in existence at the time of the conveyance. Therefore, as against existing creditors, the deed was constructively fraudulent.

The consideration must be regarded as nominal. Counsel for the defendant seem to realize that this result must follow, unless they can support the deed by showing that there was in fact a further and additional consideration to that expressed in the deed, and which is sufficient, if shown to be *bona fide.* The proof offered tends to prove that about the time of the execution of the deed, Dora Schloath and Thomas Sherlock had a settlement, and that in that settlement Sherlock acknowledged himself to be indebted to her in the sum of nearly four thousand dollars, mainly for board and lodging, and for a few items of money loaned; that this was all the property Sherlock had, and that Mrs. Schloath agreed to take it at two thousand dollars, in full payment and satisfaction of her claim. The evidence on this point, however, does not seem satisfactory, for reasons to be more fully stated hereafter. It may be observed now, however, that no reason is shown why this account was not paid sooner. Sherlock was in business, and appears to have had money and property, and it does not appear that he was unable to pay it. Furthermore, at the time of this alleged settlement, Sherlock was close up to the border line of imbecility, brought about, as

appears, by the excessive use of strong drink.   This circumstance, which, taken alone, is not enough to overthrow his deliberate deed, requires us to carefully examine the facts now offered to support it.   But it is claimed on the part of the appellant that if this deed is impeached for fraud, actual or constructive, it is not competent to support it by proving a consideration other or different from that expressed in the deed, and this view seems to be supported by respectable authority. (*Murphy* v. *Bank of Mobile,* 16 Ala. 90; *Patten* v. *Gracie,* 68 Ala. 90; *Houston* v. *Blackman,* 66 Ala. 559; *Galbreath* v. *Cook,* 30 Ark. 417; *Carmack* v. *Lovet,* 44 Ark. 180; *Glenn* v. *McNeal,* 3 Md. Ch. 349; *Ellinger* v. *Crowl,* 17 Md. 361.)   These authorities, it must be admitted, tend very much to support the plaintiff's contention. But after a careful consideration of the authorities, I am inclined to think the better reason as well as authority is the other way. The better rule appears to be that if the consideration expressed in the deed is natural love and affection, it cannot be shown to have been executed for a valuable consideration; or if voluntary, or on consideration of marriage and the like, it cannot be shown that the consideration was a moneyed one.   This would be proving by parol that the consideration was different *in kind* from that expressed in the deed, and upon well-considered authority, is not allowable.   But where the consideration is a moneyed consideration, there appears to be no reason for rejecting evidence tending to prove that a larger or additional sum was in fact paid. (*Cunningham* v. *Duyer,* 23 Md. 219; *Credle* v. *Carrawan,* 64 N. C. 422; *McKinister* v. *Babcock,* 26 N. Y. 378; *Fellows* v. *Emperor,* 13 Barb. 92; *Tyler* v. *Carlton,* 7 Me. 175; *Howell* v. *Elliott,* 1 Dev. 76; *Bank of the United States* v. *Brown,* 2 Hill Eq. 426; *Glenn* v. *McNeal,* 3 Md. Ch. 349; *Mayfield* v. *Kilgom,* 21 Md. 240; *Hindee's Lessee* v. *Longworth,* 11 Wheat. 199.) Returning now to the evidence offered of an additional consideration to that expressed in the deed, we are prepared to consider it purely as a question of fact, and viewing it in the light of all that is offered to support it, and of the surrounding circumstances, there seems to be much reason for holding the evidence insufficient.   No items of account were kept against Sherlock.   The

claim extends over a period of fifteen years. The parties had many financial transactions and settlements of their affairs during that time. In the absence of any evidence whatever as to what items were included in such settlements, it is to be presumed that every item of account then existing between the parties was included. (*Matasce* v. *Hughes*, 7 Or. 39.) In addition, then, to the evidence necessary to establish the account of the defendants, they must also overthrow this presumption by the introduction of evidence. And upon this point the record is entirely silent. But this is not all; the defendants are unable to give connected, straightforward, consistent statements of their dealings with Sherlock during the time covered by this account, and yet all the matters in dispute appear to be peculiarly within their knowledge. The entire course of business and dealing between the parties and Sherlock, it must be admitted, are against this claim. No charges were made against him or accounts kept of the items now claimed; no one was present at the alleged settlement but the defendants and Sherlock, and his condition is shown to have been such that, to say the least, it is very doubtful if he fully comprehended or understood what was said or done. The deed itself was executed in Schloath's Saloon; and one of the witnesses was his bar-keeper, and it was written at his suggestion, and by a scrivener employed by Schloath for that purpose.

Upon the whole case there is such a cloud of doubt and uncertainty hanging around the transaction, and the evidence offered of this pre-existing debt is so unsatisfactory, that we must hold the deed in question to be constructively fraudulent as to the existing creditors of Sherlock. It will therefore be set aside as to these creditors, the property will be decreed to be sold, and out of the proceeds Dora Schloath will be first paid one hundred dollars, with interest at ten per cent per annum from the fifteenth day of July, 1885, the date of the deed, and the residue will be turned over to the plaintiff, to be applied in due course of administration.